IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OSCAR ALMEIDA,
    Plaintiff,

v.

RAISING CANE'S RESTAURANTS, LLC,
HYDEE VANDIVER, individually,
BRIAN GUDZIK, individually, and
JEN SZEWC, individually,
    Defendants.

Case No.: _____

FILED - LN
June 22, 2026 3:28 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW   SCANNED BY: __ / 6-22

**1:26-cv-1906**
**Hala Y. Jarbou**
**Chief U.S. District Judge**

---

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION,
RETALIATION, AND FAILURE TO PROMOTE
JURY TRIAL DEMANDED**

---

Plaintiff Oscar Almeida, appearing pro se, brings this action against Raising Cane's Restaurants, LLC, Hydee Vandiver, Brian Gudzik, and Jen Szewc (collectively, "Defendants") for employment discrimination based on race/national origin and sex, retaliation for engaging in protected activity, and failure to promote, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101 et seq.

## I. PARTIES

1. Plaintiff Oscar Almeida ("Plaintiff" or "Mr. Almeida") is an individual residing in Ingham County, Michigan. He is a Hispanic male who was employed by Raising Cane's as a Shift Manager at Store #859, located at 301 E. Grand River Ave., East Lansing, MI 48823.

2. Defendant Raising Cane's Restaurants, LLC ("Raising Cane's" or "the Company") is a limited liability company with its principal place of business at 6800 Bishop Rd., Plano, TX 75024, and at all relevant times conducted business in the State of Michigan, including at Store #859 in East Lansing. Raising Cane's is an employer as defined by Title VII and the ELCRA, employing more than fifteen (15) individuals.

3. Defendant Hydee Vandiver is an individual who, at all relevant times, served as Operations Manager at Raising Cane's Store #859 in East Lansing, Michigan. She is sued in her

individual capacity under the ELCRA for her personal participation in discriminatory and retaliatory acts against Plaintiff.

4. Defendant Brian Gudzik is an individual who, at all relevant times, served as Area Manager with direct supervisory authority over Plaintiff. He is sued in his individual capacity under the ELCRA for his personal participation in discriminatory and retaliatory acts against Plaintiff.

5. Defendant Jen Szewc is an individual who, at all relevant times, served as Regional Vice President with supervisory authority over Plaintiff. She is sued in her individual capacity under the ELCRA for her personal participation in discriminatory and retaliatory acts against Plaintiff.

## II. JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims under the Michigan Elliott-Larsen Civil Rights Act pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, specifically in East Lansing, Ingham County, Michigan.

9. Plaintiff timely dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights ("MDCR"), assigned MDCR Case No. 636337 and EEOC Charge No. 23A-2023-00700. The EEOC issued a Notice of Right to Sue on or about April 15, 2026. This Complaint is filed within ninety (90) days of Plaintiff's receipt of that notice, and within three (3) years of the date of Plaintiff's termination, June 23, 2023, preserving claims under both Title VII and the ELCRA.

## III. FACTUAL ALLEGATIONS

### A. Background and Employment History

10. Plaintiff was initially employed by Raising Cane's on or about May 4, 2016.

11. After a brief hiatus, Plaintiff was rehired by Raising Cane's on or about August 17, 2022, as a Shift Manager at Store #859, located at 301 E. Grand River Ave., East Lansing, Michigan. This date is confirmed by Raising Cane's own Workday employment records produced in this matter.

12. In or about August 2022, Plaintiff attended and successfully completed a rigorous six-week corporate management training program in Las Vegas, Nevada, organized and run

by Raising Cane's. Plaintiff excelled in the program and was considered well-qualified for advancement within the company.

13.  Throughout his employment, Plaintiff received positive performance reviews and was consistently regarded as a capable, reliable, and skilled manager. Aside from the incidents described herein — which Plaintiff alleges were part of a pattern of discriminatory treatment — Plaintiff had no disciplinary record warranting termination.

14.  At the time of his termination on June 23, 2023, Plaintiff was the only Hispanic male remaining in the management team at Store #859.

## B. Failure to Promote — November 2022

15.  In or about November 2022, an Operations Manager position became available at Store #859.

16.  Plaintiff applied for the Operations Manager position on the same day the job posting was made available, demonstrating prompt interest and his commitment to advancement within the company.

17.  Despite his qualifications — including the recently completed six-week corporate management training program and his established performance record — Plaintiff was never interviewed for the position, never received feedback from management regarding his application, and was never given any explanation for why he was not considered.

18.  Instead, Raising Cane's selected Hydee Vandiver, a Caucasian female, for the Operations Manager position. Ms. Vandiver was interviewed for the role despite having less tenure and relevant experience than Plaintiff, while Plaintiff was denied any opportunity to interview at all.

19.  The failure to interview or consider Plaintiff for the Operations Manager position, while selecting a lesser-qualified Caucasian female candidate, constitutes disparate treatment on the basis of race/national origin and sex in violation of Title VII and the ELCRA.

## C. Pattern of Discriminatory Treatment — 2022 Through 2023

20.  Following Ms. Vandiver's promotion to Operations Manager, Plaintiff was subjected to a sustained pattern of discriminatory and hostile treatment that continued through the date of his termination.

21.  Ms. Vandiver engaged in overt favoritism toward Caucasian female shift managers. These employees were consistently assigned favorable morning shifts, while Plaintiff was routinely assigned erratic and disadvantageous shifts, despite having greater seniority than some of those employees.

22.  Plaintiff was frequently blamed and chastised by Ms. Vandiver for operational issues and mistakes that were attributable to other Caucasian female shift managers, rather than to Plaintiff.

23. Plaintiff's written communications to the management team — including email updates regarding customer satisfaction metrics and operational performance — were consistently ignored by upper management, while nearly identical communications from Caucasian female managers, including Emily Crandall, Katie Batha, and Hydee Vandiver, were regularly met with praise, acknowledgment, and positive reinforcement from upper management.

24. Plaintiff received condescending and passive-aggressive communications from management. In one incident, a message was sent in a group chat singling out Plaintiff with the statement, "You're the only one not doing them," in reference to food safety walks — a statement that was factually inaccurate. Rather than correcting this, upper management dismissed Plaintiff's complaint.

25. Plaintiff raised his concerns about this discriminatory and unequal treatment on multiple occasions to Area Manager Brian Gudzik, Regional Vice President Jen Szewc, and Operations Manager Hydee Vandiver. These complaints were dismissed, ignored, or left entirely unresolved.

### D. Michigan State University Mass Shooting — February 13, 2023

26. On February 13, 2023, a mass shooting occurred on the Michigan State University campus in East Lansing, Michigan. Plaintiff was the manager on duty at Store #859 at the time of this event.

27. Plaintiff took swift and responsible action during the emergency by turning the restaurant into a safe haven for students, families, and members of the community seeking shelter from the active shooter situation.

28. In the aftermath of the shooting, Caucasian female managers and other employees at Raising Cane's received follow-up support, expressions of empathy, and workplace accommodations from management. Plaintiff received none of these.

29. Instead, shortly after this traumatic event, Plaintiff was formally disciplined with a written reprimand for a missed log audit — a discretionary disciplinary action that stood in stark contrast to the supportive treatment extended to others in comparable circumstances.

### E. The Comparator Incident — June 10, 2023

30. On or about June 10, 2023 — thirteen (13) days before Plaintiff's own incident — Shift Manager Katie Batha, a Caucasian female holding the same title and position as Plaintiff, failed to properly secure the front door of Store #859 following her closing shift.

31. Operations Manager Hydee Vandiver sent a written communication to the entire Store #859 management team on June 10, 2023 at approximately 4:47 a.m., documenting this security failure. The email, copied to Area Manager Brian Gudzik, stated explicitly: "HUGE MISS, FRONT DOOR WAS LEFT OPEN (locked, but was not shut all the way)."

32.    Despite this documented, written acknowledgment of a serious security breach by a Caucasian female shift manager, Shift Manager Batha faced no disciplinary action, no written reprimand, and was not terminated.

33.    In subsequent administrative proceedings before the MDCR and EEOC, Raising Cane's attempted to distinguish Ms. Batha's incident by claiming that "another female shift manager did fail to properly lock the door to the restaurant when closing, however, the female employee actually closed the door, attempted to lock the door, but the latch did not catch, which are two different situations."

34.    This characterization directly contradicts the contemporaneous written documentation authored by Ms. Vandiver herself on June 10, 2023, which described Ms. Batha's incident in terms identical to Plaintiff's own: the door was "locked, but was not shut all the way." The employer's post-hoc attempt to distinguish the two incidents is contradicted by its own written records and is evidence of pretext.

### F. Plaintiff's Incident and Termination — June 23, 2023

35.    On or about June 23, 2023, Plaintiff completed his closing shift at Store #859. Following his departure, the front door of the restaurant was not fully secured. Ms. Vandiver's morning recap email sent to the management team on June 23, 2023 documented this as a significant missed opportunity.

36.    When confronted by Raising Cane's management and an HR representative during the subsequent investigation, Plaintiff immediately and fully acknowledged his responsibility for the oversight. He did not attempt to conceal, minimize, or shift blame for the incident.

37.    Approximately twelve (12) hours after the incident was identified, Plaintiff was terminated. His separation document, uploaded in Raising Cane's Workday system at 6:18 PM on June 23, 2023, confirms the termination date.

38.    The termination decision was made collectively by a group that included Operations Manager Hydee Vandiver, Area Manager Brian Gudzik, Regional Vice President Jen Szewc, supporting Restaurant Leader Tobias Schreiber, new Restaurant Leader Jessica Baranski, and Operations Manager Sarah Mersino, along with an HR representative.

39.    Of this group, Hydee Vandiver, Brian Gudzik, and Jen Szewc voted to terminate Plaintiff. Tobias Schreiber and Jessica Baranski advocated for a lesser sanction — specifically a final warning. Sarah Mersino remained neutral and did not cast a vote.

40.    Critically, the only three individuals who voted for Plaintiff's termination — Vandiver, Gudzik, and Szewc — were the same individuals against whom Plaintiff had previously registered protected complaints about discriminatory treatment and unequal scheduling. The two individuals who opposed termination had no prior conflict with Plaintiff.

41.    At the time of his termination, Plaintiff was the only Hispanic male remaining in the management team at Store #859.

## G. Post-Termination Events

42. The day following Plaintiff's termination, new Restaurant Leader Jessica Baranski — who had only recently met Plaintiff — contacted him solely to retrieve his building keys. None of Plaintiff's longtime management colleagues or supervisors with whom he had worked directly reached out to him personally.

43. On or about June 27, 2023, Plaintiff sent a formal written communication to Raising Cane's corporate leadership, including AJ Kumaran, Taylor Gautreaux, and Courtney Huffman, seeking to discuss his termination and the discriminatory treatment he had experienced. Despite corporate's subsequent contact with Plaintiff, the company indicated it was unable to take corrective action, and none was taken.

## H. Plaintiff's Protected Activity and Retaliatory Causation

44. Prior to his termination, Plaintiff repeatedly engaged in activity protected under Title VII and the ELCRA by opposing what he reasonably believed to be discriminatory employment practices and by raising formal and informal complaints about unequal treatment based on his race, national origin, and sex to supervisors Vandiver, Gudzik, and Szewc.

45. Each of the individual Defendants was personally aware of Plaintiff's protected complaints at the time they voted to terminate him.

46. The decision to terminate Plaintiff — as opposed to issuing a final warning, as two other participants in the termination meeting advocated — was made exclusively by the three individuals who were the direct subjects of Plaintiff's prior discrimination complaints. This alignment is not coincidental; it demonstrates retaliatory motive.

47. The causal connection between Plaintiff's protected activity and his termination is further demonstrated by the fact that Shift Manager Katie Batha — a Caucasian female who had not engaged in protected complaints — committed a materially identical security violation thirteen days earlier and received no discipline whatsoever.

## IV. COUNTS

### COUNT I Disparate Treatment Based on Race and National Origin Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2202 Against Defendant Raising Cane's Restaurants, LLC

48. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

49. Plaintiff is a member of a protected class by virtue of his Hispanic race and national origin.

50. Plaintiff was at all relevant times qualified for his position as Shift Manager and was performing his duties in a satisfactory manner.

51. Plaintiff suffered multiple adverse employment actions, including but not limited to: (a) failure to be interviewed or considered for the Operations Manager promotion in November 2022 despite timely application and clear qualifications; (b) unequal and erratic scheduling compared to Caucasian female managers; (c) being singled out and blamed for operational issues attributable to others; (d) receiving a disciplinary write-up following the February 2023 MSU shooting while Caucasian female managers received support; and (e) termination on June 23, 2023.

52. Similarly situated Caucasian female employees — most directly Shift Manager Katie Batha, who committed a materially identical security violation on June 10, 2023 — were not subjected to any adverse employment action for the same conduct.

53. Raising Cane's stated justification for Plaintiff's termination — the door security incident — is pretextual, as demonstrated by: (a) the company's own written documentation describing Ms. Batha's incident in identical terms; (b) the absence of any discipline imposed on Ms. Batha; and (c) the post-hoc, contradictory explanation offered by the company in administrative proceedings.

54. As a direct and proximate result of Raising Cane's discriminatory conduct, Plaintiff has suffered and continues to suffer economic damages, including lost wages and benefits, and non-economic damages, including emotional distress, reputational harm, and lasting damage to his professional career.

**COUNT II Sex Discrimination Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2202 Against Defendant Raising Cane's Restaurants, LLC**

55. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

56. Plaintiff is a member of a protected class by virtue of his sex (male).

57. Raising Cane's subjected Plaintiff to materially less favorable terms and conditions of employment compared to similarly situated female employees, including but not limited to: discriminatory scheduling practices, failure to promote, selective blame for others' errors, and disparate application of disciplinary standards.

58. The decision to terminate Plaintiff for a door security incident while imposing zero discipline on female Shift Manager Katie Batha for a materially identical incident constitutes textbook disparate treatment on the basis of sex.

59. As a direct and proximate result of this unlawful sex discrimination, Plaintiff has suffered the damages described herein.

**COUNT III Retaliation for Protected Activity Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2701 Title VII**

**Claim Against Raising Cane's Restaurants, LLC Only; ELCRA Claim Against All Defendants**

60.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. The Title VII retaliation claim in this Count is asserted against Defendant Raising Cane's Restaurants, LLC only, as individual liability is not available under Title VII. The ELCRA retaliation claim is asserted against all Defendants, including the individual Defendants, who are subject to individual liability under MCL § 37.2701.

61.    Plaintiff engaged in activity protected by Title VII and the ELCRA by making repeated internal complaints to supervisors Vandiver, Gudzik, and Szewc regarding discriminatory scheduling practices, unequal treatment, and the failure to promote him, all on the basis of his race, national origin, and sex.

62.    Each of the individual Defendants had actual knowledge of Plaintiff's protected complaints at the time they voted to terminate his employment.

63.    Following Plaintiff's protected complaints, Defendants took a series of materially adverse actions against him, including increasingly hostile treatment, a retaliatory written reprimand following the February 2023 MSU shooting, and ultimately, termination.

64.    The termination was voted for solely by Vandiver, Gudzik, and Szewc — the identical three individuals who had been the subjects of Plaintiff's prior protected complaints. Two other decision-makers who had no prior conflict with Plaintiff advocated against termination.

65.    A causal connection between Plaintiff's protected activity and his termination is established by: (a) the identity of the three individuals who voted for termination, all of whom were targets of Plaintiff's prior complaints; (b) the pattern of escalating adverse treatment following each complaint; and (c) the glaring disparity in treatment between Plaintiff and Ms. Batha, who committed the identical policy violation without consequence.

66.    As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered the damages described herein.

**COUNT IV Failure to Promote Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2202 Against Defendant Raising Cane's Restaurants, LLC**

67.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68.    In or about November 2022, Plaintiff applied for the open Operations Manager position on the day the posting went live. Plaintiff was well-qualified for the position by virtue of his management experience, positive performance record, and completion of Raising Cane's own six-week corporate management training program in August 2022.

69.    Raising Cane's did not interview Plaintiff, did not provide him any feedback, and did not communicate any reason for his exclusion from consideration.

70.    Raising Cane's instead awarded the Operations Manager position to Hydee Vandiver, a Caucasian female who had less tenure and relevant experience than Plaintiff at the time of selection.

71.    The decision to bypass Plaintiff entirely — without interview or explanation — while selecting a lesser-qualified Caucasian female was motivated by Plaintiff's race, national origin, and sex, and constitutes unlawful discrimination in violation of Title VII and the ELCRA.

72.    As a direct and proximate result of this failure to promote, Plaintiff lost the compensation, benefits, and professional advancement opportunities associated with the Operations Manager position.

### COUNT V Individual Liability Under the Elliott-Larsen Civil Rights Act MCL § 37.2701 Against Defendants Vandiver, Gudzik, and Szewc Individually

73.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74.    The Michigan Elliott-Larsen Civil Rights Act expressly imposes individual liability on supervisors and persons who personally participate in acts of discrimination and retaliation against employees for opposing conduct prohibited by the Act. MCL § 37.2701.

75.    Defendant Hydee Vandiver personally participated in the discriminatory and retaliatory conduct alleged herein, including: engaging in overt favoritism toward Caucasian female managers; subjecting Plaintiff to hostile and condescending communications; participating in the failure to promote decision; and voting to terminate Plaintiff's employment.

76.    Defendant Brian Gudzik personally participated in the discriminatory and retaliatory conduct alleged herein, including: ignoring and dismissing Plaintiff's protected complaints; and voting to terminate Plaintiff's employment while opposing managers called for a lesser sanction.

77.    Defendant Jen Szewc personally participated in the discriminatory and retaliatory conduct alleged herein, including: failing to act on Plaintiff's protected complaints; and voting to terminate Plaintiff's employment while opposing managers called for a lesser sanction.

78.    Each of these individual Defendants was a proximate cause of the adverse employment actions taken against Plaintiff, and each is individually liable under the ELCRA for the resulting damages.

### V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

79.    Plaintiff timely dual-filed a Charge of Discrimination with the EEOC and MDCR on or about July 21, 2023, assigned MDCR Case No. 636337 and EEOC Charge No. 23A-2023-00700. The charge alleged discrimination and retaliation based on national origin and sex.

80. The MDCR conducted a full investigation and issued a Notice of Disposition and Order of Dismissal on or about November 20, 2025.

81. Plaintiff, through counsel, timely filed a Request for Reconsideration on November 25, 2025, raising additional legal arguments including the comparator evidence, retaliation theory, and cat's paw doctrine. The reconsideration was denied.

82. The EEOC issued a Notice of Right to Sue on or about April 15, 2026, EEOC Charge No. 23A-2023-00700.

83. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the EEOC Right-to-Sue Notice, and within three (3) years of the date of termination. All administrative prerequisites to suit under both Title VII and the ELCRA have been fully satisfied.

## VI. ARBITRATION AGREEMENT — NOTICE AND RESERVATION OF RIGHTS

84. Plaintiff is aware that Raising Cane's may assert the existence of a Mutual Agreement to Arbitrate Claims, signed as a condition of employment on or about August 17, 2022 and again on May 23, 2023.

85. Plaintiff hereby reserves all rights to challenge the enforceability of any such arbitration agreement on grounds including but not limited to: procedural and substantive unconscionability; lack of meaningful choice or assent; the conditions under which the agreement was presented; and any applicable statutory or judicial limitations on the mandatory arbitration of civil rights claims arising under Title VII.

86. Plaintiff intends to litigate this matter in federal court and will oppose any motion to compel arbitration.

## VII. DAMAGES

87. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer the following damages:

(a) Lost wages and salary from the date of termination, June 23, 2023, through the date of judgment;

(b) Lost employment benefits, including health insurance and retirement contributions;

(c) Lost promotional opportunity and the salary differential between the Shift Manager and Operations Manager positions from November 2022 forward;

(d) Future lost earning capacity and front pay;

(e) Damage to professional reputation and career trajectory;

(f) Emotional distress, mental anguish, humiliation, and loss of enjoyment of life;

(g) Financial harm, including damage to credit standing and housing stability, resulting directly from the loss of income;

(h)  Punitive damages based on Raising Cane's willful and malicious disregard of Plaintiff's federally and state-protected rights;

(i)  Reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 2000e-5(k) and MCL § 37.2801, if counsel is subsequently retained; and

(j)  Such other and further damages as may be proven at trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Oscar Almeida respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

A.  A declaratory judgment that Defendants' conduct constitutes unlawful employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act;

B.  Compensatory damages for lost wages, lost benefits, and future economic losses in an amount to be proven at trial;

C.  Compensatory damages for emotional distress, mental anguish, reputational harm, and loss of enjoyment of life in an amount to be proven at trial;

D.  Punitive damages against Defendant Raising Cane's Restaurants, LLC for its willful, intentional, and malicious discriminatory and retaliatory conduct, in an amount to be determined by the jury;

E.  Back pay representing lost wages and benefits from June 23, 2023 through judgment;

F.  Front pay or reinstatement, as the Court deems appropriate;

G.  The salary differential lost as a result of the unlawful failure to promote from November 2022 forward;

H.  Pre-judgment and post-judgment interest as permitted by law;

I.  Reasonable attorney's fees and litigation costs pursuant to 42 U.S.C. § 2000e-5(k) and MCL § 37.2801, if counsel is obtained;

J.  Such other equitable and legal relief as this Court deems just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Signed by:



Oscar Almeida

Plaintiff, Pro Se

4721 Dunckel Road

Lansing, MI 48910

(956) 312-1197

oscaralmeida100@yahoo.com


Dated: June 22, 2026